**KAUFMAN NORTHWEST, INC., Appellant,**

v.

**BI–STONE FUEL COMPANY, Appellee.**

**No. 858.**

Court of Civil Appeals of Texas, Tyler.

Oct. 23, 1975.

Rehearing Denied Nov. 13, 1975.

---

2. Tex. Tax.-Gen. Ann. art. 20.09(E) (1969).

Kurt A. Philipps, Morgan, Shumpert, Huff, Philipps, Mosley & Co., Kaufman, for appellant.

J. Dan Bohannan, Burford, Ryburn & Ford, Wayne Pearson, Dallas, for appellee.

MOORE, Justice.

This is an eminent domain proceeding. Appellee, Bi-Stone Fuel Co., instituted condemnation proceedings against appellant,

Kaufman Northwest, Inc., for the purpose of condemning a pipeline easement seventy feet in width across a 536-acre tract of land owned by Kaufman Northwest. The land taken consisted of 8.75 acres and was condemned for the purpose of constructing a 20-inch natural gas pipeline. Trial was before a jury and resulted in a verdict awarding Kaufman Northwest the sum of $5,250.00 for the 8.75 acres taken and $5,274.10 for damages to the remainder. The trial court entered judgment on the verdict and Kaufman Northwest perfected this appeal.

We affirm.

The appellant, defendant below, by its first point contends that the trial court erred in admitting in evidence Plaintiff's Exhibit No. 2 which consisted of an aerial photograph of appellant's tract of land with notations denoting the types of soil existing on the 536-acre tract in question. The exhibit was prepared by the U. S. Department of Agriculture, Soil Conservation Service of Kaufman County, Texas. Appellee offered the exhibit in evidence as a business record under Art. 3737e, V.A.T.S. Appellant's sole objection to its admission was on the ground that a proper predicate was not laid for admission as a business record.

Article 3737e provides:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility."

■ Section 4 of 3737e defines the term "business" as to include "any and every kind of regular organized activity whether conducted for profit or not." Clearly the Soil Conservation Service is a "business" within the meaning of the statute. Thus, to establish a proper predicate appellee was required to meet only the requirements of paragraphs (a), (b) and (c) in Section 1 through the testimony of a qualified witness.

■ Prior to offering the exhibit, appellee called as a witness, Cecil Chaney, who testified that he was an employee of the U. S. Department of Agriculture, Soil Conservation Service Kaufman County and head of the Terrell Sub-unit. He testified (1) that the Soil Conservation Service keeps and maintains aerial maps of the entire county and that such records, including plaintiff's Exhibit No. 2, are within his custody and control; (2) that aerial maps with soil notations are regularly made and kept by the Soil Conservation Service; (3) that the maps are regularly used by the Soil Conservation Service employees in developing conservation plans with landowners; (4) that the maps are kept in the regular course of the business of the Soil Conservation Service; (5) that the maps are prepared by soil scientists of the Soil Conservation Service after a first-hand investigation and soil testing of the particular tract to be

mapped out; (6) that the particular map offered in evidence was made soon after the time the soil scientist investigated and soil tested appellant's land. Mr. Chaney further testified that the number "77" plotted by the soil scientist on the exhibit denotes "Kaufman Clay, zero-to-one percent slope, frequently flooded" and the number "52" denotes "gowan and fine sandy loam, zero-to-one percent slope, frequently flooded." As we view the record, the foregoing testimony was sufficient to establish a proper predicate for the introduction of the instrument. We therefore hold that the trial court did not err in permitting it to be offered in evidence as a business record.

■ In any event, the exhibit was admissible under the provision of Article 3731a, V.A.T.S. In substance this statute provides that any written instrument which is permitted or required by law to be made, filed or kept by an officer or clerk of the United States or his deputy or employee, shall, so far as relevant, be admitted in the courts of this State as evidence of the matters stated therein. The Secretary of Agriculture is authorized to conduct surveys and research relating to soil conservation and publish the result of such surveys. 16 U.S.C.A. Secs. 590a, 590g(a), 590i (1974). There is no question that the exhibit in question was a written instrument permitted or required to be made or kept by an officer of the United States or his employee. The written report, being a United States Government report was admissible under the statute.

■■ Appellant further contends under its first point of error that even if the exhibit amounted to a business record, it was still inadmissible because it contained opinions and conclusions of the soil scientist who made the notations. This contention was not urged at the trial and may not be urged for the first time on appeal. *Houston & T.C.R. Co. v. Knapp*, 51 Tex. 569, 577 (1879); *Kettle v. Smircich*, 415 S.W.2d 935, 938 (Tex.Civ.App.—Corpus Christi 1967, no writ); *Seymour v. Texas & N.O.R. Co.*, 209 S.W.2d 814 (Tex.Civ.App.—El Paso 1947,

writ ref'd). When the exhibit was offered in evidence, appellant objected to it only on the ground that a proper predicate was not laid. The general rule is that grounds specified by appellant in its objection at trial may not be enlarged on appeal to include other grounds not asserted at trial. *Bohanan v. Hans*, 26 Tex. 445, 452 (1863); *City of Wichita Falls v. Jones*, 456 S.W.2d 148, 154 (Tex.Civ.App.—Fort Worth 1970, no writ); *Texas Employers Insurance Association v. Hicks*, 271 S.W.2d 460, 464 (Tex.Civ.App.—Eastland 1954, writ dism'd). Appellant's first point is overruled.

■ By its second point, appellant complains of the admission in evidence of appellee's Exhibit No. 5 which is nothing more than an enlarged drawing of a portion of appellee's Exhibit No. 2. It depicts those portions of appellant's tract which are classified as overflow land. This exhibit was offered in evidence in connection with testimony of the witness Osborne who testified he prepared the exhibit from an exact copy of Exhibit No. 2. He testified that Exhibit No. 5 accurately portrays that which is contained in Exhibit No. 2 and that by taking the various soil classification numbers listed by the soil scientist on Exhibit No. 2, he was able to determine what part of appellant's land was classified as overflow land. He further testified that upon taking the information found on Exhibit No. 2, he determined that approximately 150.6 acres of appellant's land were classified as overflow land. Appellant objected to the exhibit on the ground that Osborne testified he prepared Exhibit 5 from a copy of Exhibit 2 rather than the original. Appellant argues that there is nothing to show that the copy used to prepare Exhibit five was an authentic copy of Exhibit No. 2. The contention is without merit and is overruled. Prior to the time the exhibit was admitted in evidence, the witness Osborne testified the copy he used in preparing Exhibit 5 was exactly the same as Exhibit No. 2. While on the witness stand he compared the copy with the original and stated unequivocally that they were the same. There is no evi-

dence to the contrary. Since the undisputed proof shows that Exhibit No. 5 was nothing more than an accurate enlargement of Exhibit No. 2, which was properly admitted in evidence, the trial court committed no error in permitting it to be admitted in evidence.

By its third point of error, appellant contends that the trial court erred in excluding from evidence Defendant's Exhibits Nos. 18 and 19 which were reports filed with the U. S. Department of Transportation showing leaks in appellee's pipelines in Leon and Fannin County. Appellee objected to the exhibits on the ground that there was no evidence showing that the other lines were generally similar in their important or essential characteristics to the line in question, as required by the holding in *Delhi Gas Pipeline Co. v. Mangum*, 507 S.W.2d 631, 635 (Tex.Civ.App.—Tyler 1974, no writ). We overrule the point.

Appellant's Exhibit No. 18 is a report filed with the Department of Transportation showing a leak occurred on one of appellee's lines in Leon County. The report shows the leak was caused by corrosion. The evidence shows several material dissimilarities in that line and the line in question. The present line was constructed with cathodic protection applied so as to prevent corrosion. The pipe was inspected by the use of x-ray before installation. The thickness of the pipe was substantially greater than that of the Leon County line. The line was constructed with new pipe, whereas the Leon County line was constructed with used pipe; had no cathodic protection and was not x-ray inspected. In other respects some similarity existed. While the court's ruling is not entirely free from doubt, we find no clear abuse of discretion on the part of the trial judge in refusing to admit Exhibit No. 18 relating to the leak in the Leon County line. With regard to the leak in the Fannin County line, the evidence shows that the rupture was caused solely by having been struck twice by the blade of a bulldozer while constructing a lake. There is no evidence that the leak was caused by anything wrong with the pipe such as corrosion or for any other cause. Appellant's purpose in offering such evidence was to show that pipelines are prone to leak irrespective of how well they are constructed. We fail to see how a rupture caused by a bulldozer would constitute proof showing pipelines are prone to leak and accordingly find no error in the ruling of the court in excluding appellant's Exhibit No. 19.

Even if the trial court's ruling could be construed as error, we fail to find how any harm could have resulted to appellant in view of other evidence showing leaks regularly occur in pipelines. Tex.R. Civ.P. 434. The only thing the two exhibits would have established was that pipelines do, on occasion, leak. There is no testimony that the leaks in Leon and Fannin Counties caused any explosion or damage. The record reveals that appellant was given a free rein to produce testimony of five witnesses who testified that leaks can and do occur in pipelines. Appellant also proved the fear of danger in the minds of the public and its effect on market value of the land near the pipeline. Consequently, the exhibits in question were merely cumulative of the oral testimony in which appellant repeatedly established that pipelines do, on occasion, leak. Exclusion of documentary evidence is harmless where similar evidence is before the jury by way of testimony. *Ynsfran v. Burkhart*, 247 S.W.2d 907, 912–913 (Tex.Civ.App.—Austin, 1952 writ ref'd n. r. e.); *Caraway v. Flagg*, 277 S.W.2d 803, 806 (Tex.Civ.App.—Dallas 1955, writ ref'd n. r. e.); *Weiler v. Weiler*, 336 S.W.2d 454, 458–459 (Tex.Civ.App.—Eastland 1960, no writ).

Appellant's fourth and fifth points of error complain of the trial court admitting in evidence appellee's Exhibit No. 1 showing that appellant's land was burdened with another gas pipeline easement extending across the land maintained by Lone Star Gas Company. Appellant objected on the ground that evidence of other existing

easements on the land is not admissible by the condemnor in the absence of evidence showing similarity. We find this contention to be without merit. The existing Lone Star Easement and testimony concerning it were introduced to show that the condemned tract of land was already burdened prior to the pipeline in question. When offered for this purpose, the evidence tends to diminish the market value of appellant's tract. It is therefore admissible irrespective of a showing of similarity. *Buzzard v. MAPCO, Inc.*, 499 S.W.2d 352, 358 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.); *Northern Natural Gas Co. v. Johnson*, 278 S.W.2d 410, 412 (Tex.Civ.App. —Amarillo, 1954, writ ref'd n. r. e.). Appellant's fourth and fifth points are overruled.

By points six and seven the appellant urges that the trial court erred in refusing to grant its motion for new trial on the ground that juror Royce Ford was disqualified as a matter of law in that he gave incorrect and erroneous answers on voir dire examination resulting in injury to appellant.

At the hearing on motion for new trial in response to questions propounded by appellant's counsel, juror Ford testified he did not like Mr. Council, a witness and one of the stockholders of Kaufman Northwest. He testified, however, that he knew Mr. Council only by name and had no reason to dislike him other than from first impression. He testified repeatedly that he told the truth on voir dire examination when he stated he had no bias or prejudice against Mr. Council. He also testified he had no bad feelings toward Mr. Council. Juror Splawn testified that before the evidence was concluded that Ford told him that Mr. Council had built a house for one of his relatives and when the windows fell out, Council did nothing about it and that Council was good at that kind of thing. Ford denied making the statement. While the record reveals that Ford and another juror argued during the jury's deliberation that the pipeline caused no damages to the remainder of the land, there is no evidence

that Ford made any prejudicial remarks about Council during the jury's deliberation. Ten of the jurors agreed on $10.00 per acre as damages to the remainder, but juror Ford and one other juror did not agree and refused to sign the verdict. At the request of appellant the trial court filed findings of fact and conclusions of law. Pursuant to the request, the trial court found: (1) that the juror, Royce Ford, answered truthfully all questions propounded to him on voir dire examination at the time the jury was being selected, (2) that the juror, Royce Ford, did not conceal any bias or prejudice toward D. G. Council, (3) that the juror, Royce Ford, was not disqualified to serve as juror, (4) that the juror, Royce Ford, was not guilty of jury misconduct, (5) that the juror, Royce Ford, was not guilty of jury misconduct which affected the jury's verdict or otherwise resulted in probable injury to the defendant.

▮▮▮▮ It is well settled that findings made by the trial court in overruling a motion for new trial are binding on the Court of Civil Appeals if supported by the evidence. *Clark v. Levingston Shipbuilding Co.*, 226 S.W.2d 212, 217 (Tex.Civ.App.— Beaumont 1949, writ ref'd n. r. e.); *Dallas Railway & Terminal Co. v. Bishop*, 203 S.W.2d 651, 656 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.). Juror Ford testified at the hearing on the motion for new trial that his opinion as to the damage suffered by the defendant was not based on what he may have thought of any particular party in the lawsuit and that in the jury deliberations he used only the evidence presented in the case in arriving at his opinion on damages. At most, the evidence is only conflicting; therefore, we are not at liberty to disturb the trial court's findings. *Brawley v. Bowen*, 387 S.W.2d 383, 384 (Tex.1965).

▮▮▮▮ Appellant's eighth and ninth points assert that the trial court erred in excluding the testimony of one of appellant's witnesses showing that appellant bought the land for the purpose of subdivid-

ing it, and in excluding appellant's Exhibit No. 20, which was a plat showing how appellant intended to subdivide it into smaller tracts in anticipation of future development. Appellant argues that both the testimony showing that appellant's purpose in buying the land was eventually to subdivide it and defendant's Exhibit No. 20 were admissible to show the adaptability of appellant's land to subdivision and development. We are not in accord with this contention. The record reveals that at the time appellant's land was taken, it was raw acreage being used for grazing purposes.

Appellee stipulated before the presence of the jury that appellant's land is physically susceptible and adaptable to subdivision and smaller tracts of land. While proof of the adaptability of land for certain purposes is admissible, it has been held that evidence as to the landowner's subjective intent concerning the future use of the property is inadmissible, because such evidence opens a field too speculative and uncertain. *Johnson v. State*, 474 S.W.2d 327, 329 (Tex.Civ. App.—Austin 1971, writ ref'd n. r. e.); *Melton v. State*, 395 S.W.2d 426, 429 (Tex.Civ. App.—Tyler 1965, writ ref'd n. r. e.); *American Guaranty Life Health and Accident Insurance Co. v. State*, 332 S.W.2d 135, 140 (Tex.Civ.App.—Austin 1960, no writ). In light of appellee's stipulation admitting appellant's land was adaptable for subdivision, such oral testimony was only cumulative on the question of adaptability and its exclusion did not result in any harm to appellant.

■ Appellant's Exhibit No. 20 showing the manner in which appellant intended to subdivide the land was likewise inadmissible. Where the property condemned is raw acreage it is not proper to admit in evidence hypothetical plats of nonexistent subdivisions, for the reason that they tend to cause the jury to value the land as lots in an established subdivision where none exists. *Texas Electric Service Co. v. Yater*, 494 S.W.2d 271, 275 (Tex.Civ.App.—El Paso 1973, writ ref'd n. r. e.); *State v. Curtis*, 474 S.W.2d 635, 637 (Tex.Civ.App.—San Antonio 1971, no writ); *Lower Nueces River Water Supply District v. Collins*, 357 S.W.2d 449, 452 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.). Appellant's eighth and ninth points are overruled.

■ By its tenth point, appellant contends that the trial court erred in refusing to strike appellee's amended petition. The amendment was requested within 7 days of trial and the court permitted the amendment over appellant's objection claiming surprise. Appellant was offered a continuance by the court, but declined such offer and made no motion of its own for a continuance. Appellant thus waived its right to complain of the ruling. *Kree Institute of Electrolysis, Inc. v. Fageros*, 478 S.W.2d 569, 573 (Tex.Civ.App.—Waco 1972, no writ); *Miller v. Wagoner*, 356 S.W.2d 363, 367 (Tex.Civ.App.—Austin 1962, no writ); *Dirks v. Dirks*, 302 S.W.2d 471, 474 (Tex. Civ.App.—San Antonio 1957, writ dism'd); Tex.R.Civ.P. 63.

■ Appellant's eleventh point contends that there is insufficient evidence to support the jury's answers to special issues 2 and 4 and that such answers are against the overwhelming weight and preponderance of the evidence.

By special issue number 2, the jury found the market value of the 8.75-acre strip condemned to be $3,500.00 immediately after its acquisition by Bi-Stone Fuel Co. By special issue number 4, the jury found the market value of the remaining 527.41 acres to be $522,135.00 immediately after the condemnation. Appellee called appraisal witnesses who testified as to the market value of the property after the easement was condemned. Each testified as to his expert qualifications. Appellant offered three expert witnesses as to value. The jury's finding to special issue No. 2 is the same as that testified to by one of appellant's own expert witnesses. The jury's finding to special issue No. 4 computes out to $990 per acre which is only $10 less per acre than the $1,000 per acre value figure testified to by

one of appellant's witnesses. The amount fixed by the jury was greater than that testified to by appellee's expert witnesses and well within the range of the expert testimony. After weighing and balancing all of the testimony of the expert witnesses, both that in favor of the verdict as well as that against the verdict, we have concluded that we would not be justified in holding that the evidence was insufficient or so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. Appellant's eleventh point is overruled.

Other points brought forward by appellant have been considered and found to be without merit and are overruled without discussion.

Finding no reversible error, the judgment of the trial court is affirmed.